UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARTALLION A. ALLEN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4: 19 CV 3154 DDN |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Dartallion A. Allen, Jr., for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Act, 42 U.S.C. §§ 401-485, and 1381-1385, respectively. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born in 1984 and was 33 years old at the time of his July 2, 2017 alleged onset date. (Tr. 177.) He filed his applications on December 8, 2017, alleging disability due to back problems, herniated disks, and osteoarthritis in his back. (Tr. 52, 58, 167-86, 224.) His applications were denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 68-73, 75-76.)

On April 18, 2019, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 10-19.) The Appeals Council denied his

request for review. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to his appeal.

Plaintiff was treated by chiropractor Eric A. Nepute from April 5 to December 7, 2017. (Tr. 339-409.) Examinations showed he was tender to palpation at various points in his spine and occasionally in his pelvis. He exhibited an improper posture, imperfect cervical curve needing correction, and misalignment in the thoracic, lumbar, and sacroiliac regions. His range of motion in his cervical spine was restricted. Palpation revealed muscle spasm and inflammation along the cervical, thoracic, lumbar, and sacroiliac segments. Examination of the shoulders revealed restricted range of motion, tenderness to palpation, muscle spasms, and edema in the bilateral shoulders. Dr. Nepute noted plaintiff stabilized with treatment. (Tr. 339-409.) His overall condition progressed slowly but steadily. (Tr. 341, 344, 347, 350.) On December 7, 2017, Dr. Nepute believed plaintiff had reached maximum medical improvement and released him from care. (Tr. 339.)

Plaintiff also saw Anthony R. Anderson, M.D., for physical therapy and pain management from April 3 to December 7, 2017. His examination findings are essentially the same as Dr. Nepute's. (Tr. 410-540, 544-45.)

Plaintiff received lumbar trigger point injections on six occasions between June 15 and September 19, 2017. (Tr. 431, 502, 514, 525, 538.) He received a lumbar facet injection on August 2 and August 9, 2017. (Tr. 464, 479-80.)

On September 13, 2017, Dr. Nepute completed a medical source statement. Plaintiff's symptoms included low back pain, abdominal pain, groin pain, and bilateral leg pain, which were constantly severe enough to interfere with attention and concentration. He reported medication side effects including brain fog, dizziness, and drowsiness. Dr. Nepute opined plaintiff that could walk one to two blocks, sit and stand/walk for fifteen minutes at a time and a total of two hours each per day. He needed a job which would

2

allow him to shift positions at will. He would need to take four to six one-hour unscheduled breaks per day. He could occasionally lift up to ten pounds, and use his hands and fingers and arms for 25% of the day. He would miss work more than four times per month. (Tr. 314-15.)

While seeing Dr. Nepute, plaintiff reported his average pain level between appointments fluctuated from 2/10 to 10/10. (Tr. 343, 346, 349, 352, 354, 362, 364, 371, 375, 381, 393, 405.) At the time of his last appointment with Dr. Nepute on December 7, 2017, plaintiff reported pain about 40-50 percent of the time with an average pain level of 5/10. (Tr. 337-39.)

On January 19, 2018, plaintiff was seen in urgent care complaining of abdominal and back pain. On physical examination, he had a normal appearance, normal gait and station, full range of motion, normal sensation, and no abnormalities with stability, muscles, or extremities. He was diagnosed with a lumbar strain and prescribed steroids, muscle relaxants, and pain medication. (Tr. 567-69, 573.)

Plaintiff saw Alexander W. Meyer, D.O., on January 22, 2018, to establish care. He complained of chronic back pain that radiated down the right leg to the knee and around the abdomen to the groin. He complained of numbness and tingling in his leg, and had been taking Gabapentin, used to treat nerve pain. However, he had run out of medication six months earlier. He reported receiving nerve blocks and steroid injections that provided temporary relief. On examination, he appeared to be in moderate pain and exhibited tenderness to palpation over the right lumbar paraspinal muscles. His range of motion was decreased secondary to pain, and was worse with bending on the right. His right knee reflex was 4+ on the right and 2+ on the left. He exhibited decreased sensation to touch on the right lateral and anterior thigh. Examination also revealed no spinous process tenderness, no evidence of muscle spasm, negative straight leg raising, and full strength of 5/5 in all extremities. He was prescribed Gabapentin, Zofran, Flexeril, Mobic, and a Medrol Dosepak, and referred for further workup. In addition to newly prescribed

3

medications, Dr. Meyer encouraged plaintiff to do at least 30 minutes of aerobic exercise a day.  (Tr. 584-88.)

Plaintiff saw Thomas J. Malbrough, M.D., on February 5, 2018, for an initial evaluation of low back pain.  He reported that his pain had worsened over the past year and that Gabapentin provided some pain relief.  He described his pain as throbbing, shooting, stabbing, burning, numbing, aching, sharp, and tender.  Pain was exacerbated with sitting, standing, walking, bending, straining, and lifting.  On examination, he exhibited mild right lumbar tenderness and slight paraspinal myofascial tension.  He was tender to palpation with guarding over the right lower quadrant of the abdomen.  He had a normal gait, no edema, fully intact lower extremity strength and sensation, symmetric reflexes, and negative straight leg raise.  Dr. Malbrough reviewed an MRI dated May 3, 2013, which showed mild flattening at L3-L4 and L4-L5.  He noted it did not reveal any stenosis or disc herniations in the lumbar spine and provided no evidence of explanation for plaintiff's symptoms.  On February 9, 2018, he received a right ilioinguinal nerve block for nerve entrapment.  (Tr. 664-70.)

On February 19, 2018, plaintiff saw Dr. Meyer and requested a referral to a general surgeon for his ilioinguinal nerve entrapment.  He reported doing better on Gabapentin, but was not taking Flexeril, a muscle relaxant, because it made him feel groggy.  His exam was normal.  Dr. Meyer noted he appeared well and in no distress.  His Gabapentin was increased and Norco was added for breakthrough pain.  (Tr. 606.)

Plaintiff saw Dr. Meyer again on March 19, 2018.  He had increased right groin pain, pain in the right lower quadrant of the abdomen, and right lower back pain.  He reported nightmares with Gabapentin.  Examination was normal and he appeared well, alert, and in no distress.  He was to continue on current medications.  (Tr. 620-22.)

On April 16, 2018, plaintiff saw Dr. Meyer for complaints of abdominal pain.  He reported that surgery was denied because the insurance company wanted him to try injections.  He complained of consistent pain, and pain with walking or other activities.  Examination was normal and he was to continue on his medications.  (Tr. 634-35.)

4

On May 23, 2018, he underwent resection surgery for and burial of the ilioinguinal nerve and neuroma. (Tr. 575.) He saw Dr. Meyer on July 17, 2018 for follow-up and reported his pain was much improved since surgery and that he was able to exercise and be much more active. His exam was normal and he was no longer taking Gabapentin or Norco. Dr. Meyer believed his inguinal nerve neuralgia was "resolved." (Tr. 652-53.)

**ALJ Hearing**

On March 12, 2019, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 24-50.) His pain has improved since surgery. Although he received injections in his back, his doctors ultimately determined that his pain was caused by an entrapped ilioinguinal nerve. Currently, he only feels stiffness in neck, shoulders, arms and hands, and he has learned techniques such as stretching exercises to keep everything "at bay." Prior to surgery, it was difficult for him to take care of his two children, both under age 6, and do simple things. (Tr. 24-33.)

He returned to work at the end of July or early August 2018. However, he was let go due to an allergic reaction to chemicals he was working around. Prior to surgery, he had difficulty sleeping, lifting, standing, walking, sitting, and driving. He could stand for about twenty minutes. He could sit about five or ten minutes, but was constantly moving and adjusting. He could lift about five to ten pounds. He would have good days and bad days, but even on good days he had to be careful about what he did. He did not consider himself disabled as of the date of the hearing, and did not consider himself disabled since his surgery. (Tr. 33-37.)

A vocational expert (VE) also testified at the hearing. (Tr. 41-49.) Plaintiff has past relevant work as a retail manager, sales representative and facility attendant at a gym, assistant manager at a gym, and pest control technician. The ALJ asked the VE to consider a hypothetical individual limited by what he would later find to be plaintiff's residual functional capacity (RFC). The VE testified that plaintiff could perform his past work as a sales representative and facility attendant and as an assistant manager as generally performed. He could also perform other work in the national economy, including sub-

assembler and office helper.  If further limited to sedentary work, he could perform the jobs of addresser and document preparer.  If he missed half a day for three days per week, or was off task 15% of the day, he would be unable to work.  (Tr. 43-47.)

### III.   DECISION OF THE ALJ

On August 8, 2017, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 10-21.)  At Step One, the ALJ found that plaintiff had engaged in substantial gainful activity from the third quarter of 2018 through early 2019, but there had been a continuous period of 12 months during which plaintiff did not engage in substantial gainful activity. At Step Two, the ALJ found plaintiff had severe impairments that included cervical and thoracic spine inflammation, and lumbar degenerative joint disease with radiculopathy with neuritis and without sciatica.  At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12-14.)

The ALJ concluded plaintiff retained the RFC to perform a range of "light" work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except lifting and carrying were limited to 10 pounds frequently and 20 pounds occasionally.  Standing and walking were limited to four hours in an eight-hour workday and two hours at any one time.  Reaching bilaterally was limited to frequent, except that reaching above the head was limited to occasional.  Postural activities could be performed occasionally, with no kneeling or crawling.  He cannot climb ropes, ladders, or scaffolds. Climbing ramps or stairs was limited to occasional.  He cannot stand on vibrating surfaces or use air or vibrating tools. Sitting was limited to six hours in an eight-hour day and two hours at any one time.  While seated he would require the ability to shift at will from side to side and can remain on task while seated.  He would require an opportunity to stand and stretch in place at the workstation and could remain on task while stretching which will last no more than two minutes.  Afterwards he could return to his seated position or to a standing position as the job requires.  (Tr. 14.)

6

Based on this RFC and the testimony of the VE, at Step Four, the ALJ found plaintiff could perform his past relevant work as a sales representative and assistant manager as generally performed. The ALJ made an alternative finding at Step Five, finding jobs that exist in significant numbers in the national economy that plaintiff could perform, including sub assembler and office helper. Accordingly, the ALJ found plaintiff was not disabled under the Act. (Tr. 17-18.)

## IV.  GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the

7

claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his past relevant work. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because he rejected the only opinion of record and determined the RFC based on his own lay opinion of the evidence. He argues the ALJ mischaracterized the record by stating that Dr. Nepute's treatment records did not contain formal examinations and showed only reduced range of motion. He argues the ALJ's mischaracterization of Dr. Nepute's treatment notes renders his analysis of Dr. Nepute's opinion unsupported by substantial evidence. He argues that even assuming the Court concludes the ALJ appropriately rejected Dr. Nepute's opinion, the decision is still not supported by substantial evidence, as there are no opinions in the record to support the ALJ's RFC. This Court disagrees.

Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c.

The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations. Supportability and consistency

are the most important factors and their application must be explained. Other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's "treatment relationship" with the claimant, including the length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(b), (c), 416.920c(b), (c) (2017).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Here, the ALJ found Dr. Nepute's opinion not persuasive because it was not supported by Dr. Nepute's own treatment records or consistent with other record evidence. (Tr. 16.) With respect to supportability, the ALJ noted what he believed was a rather limited scope of Dr. Nepute's examinations and findings that were expressed in a very broad manner. (Tr. 16.) The ALJ also noted that Dr. Nepute's records were inconsistent with other record evidence before and after Dr. Nepute's opinion, which document more detailed physical and mental examinations with few abnormalities. (Tr. 16, 567-68, 580, 584-88, 605-07, 634-35, 653, 658, 666-70.)

In formulating plaintiff's RFC, the ALJ discussed plaintiff's alleged symptoms and limitations, as well as Dr. Nepute's records, which the ALJ stated "describe inflammation, muscle spasm, and restricted range of motion in his cervical and thoracic spine, but little else." (Tr. 15-16.) The ALJ then discussed diagnostic studies and records from other providers dated prior to and after Dr. Nepute's records, which he believed contained more

9

specific details about clinical findings. These included the MRI of plaintiff's lumbar spine, lumbar facet injections and nerve block, and nerve entrapment surgery. He noted that plaintiff could still perform his activities of daily living such as personal care and caring for his young child, even before his surgery. (Tr. 15-16.) In light of the above, this Court concludes the ALJ did not mischaracterize Dr. Nepute's records. *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (ALJ's job is to resolve conflicts in the evidence).

As the ALJ noted, Dr. Nepute's chiropractic records contain descriptions of pain, spasm, some restricted range of motion, and inflammation in the context of examinations of plaintiff's spine and shoulder, but they do not provide evidence of a more complete picture of plaintiff's health. (Tr. 317-409.) The ALJ cited other record evidence that provided more complete examinations of plaintiff's body systems which the ALJ noted showed few deficits and no evidence of distress. (Tr. 15-16, 568, 587, 606, 621, 634-35, 653, 666-67, 669-70.) The ALJ noted these exams showed moderate pain on one occasion (Tr. 587), normal gait and station (Tr. 568, 666, 669), some reduced range of motion at times (Tr. 587), full range of motion at other times (Tr. 568, 669-70), normal sensation or mildly reduced sensation (Tr. 568, 587, 653, 666), normal psychiatric exams (Tr. 568, 587, 666), mild tenderness to palpation (Tr. 587, 666, 670), intact reflexes (Tr. 587, 666), negative straight leg raises (Tr. 587, 666), full strength in the lower extremities (Tr. 666), normal neurological exams (Tr. 606, 621, 635, 653), and no edema in the extremities. (Tr. 587.)

When reading the decision in its entirety, instead of merely reading the paragraph concerning Dr. Nepute in isolation, the decision demonstrates the ALJ properly considered the record evidence as a whole in evaluating Dr. Nepute's opinion. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (When a medical source includes limitations in an opinion that are not reflected in treatment notes or medical records, it undermines that opinion and supports the ALJ's finding that it is not persuasive.) This Court agrees with the ALJ's conclusion that Dr. Nepute's opinion is not supported by his own records or consistent with the remainder of the record.

Plaintiff argues in the alternative that even if the Court finds the ALJ properly evaluated Dr. Nepute's opinion, the RFC is not supported by substantial evidence because the record does not contain any opinions to support it. He argues the ALJ relied on his own lay interpretation of the evidence without any explanation of how the evidence supports the finding. Plaintiff is incorrect.

Because RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Liner v. Colvin,* 815 F.3d 437, 438 (8th Cir. 2016). However, there is no requirement than an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Further, the Eighth Circuit has held that an RFC finding is supported by substantial evidence when the evidence of record reveals largely mild or normal findings. *Cf. Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (upholding ALJ's finding that plaintiff could perform light work based on largely mild or normal objective findings, despite the fact that the medical evidence was "silent" with regard to work-related restrictions).

Here, the ALJ included a discussion with specific citations to the record evidence documenting consideration of the relevant evidence in support of the RFC finding (Tr. 13-16.) This includes evaluation of plaintiff's alleged symptoms (nonmedical evidence) along with evaluation of allegations, treatment history, clinical observations, diagnostic findings, and medical opinions (medical evidence), as required by agency regulations (Tr. 13-16). *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Social Security Ruling* (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Court reviews the record "to ensure that an ALJ [did] not disregard evidence *or* ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (citations omitted).

As noted above, in making the RFC finding, the ALJ properly considered all of the relevant evidence. This evidence provides support for the ALJ's RFC finding for a

significantly reduced range of light work. (Tr. 13-16.) This is what the ALJ is required to do when making an RFC finding. *See Myers*, 721 F.3d at 527 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations."). The ALJ discussed plaintiff's alleged symptoms and limitations, including pain, activities of daily living, work history, and medication. (Tr. 13-16.) The ALJ also documented consideration of records from Dr. Nepute that provided general descriptions of findings, and other medical evidence from multiple providers that indicated few mild abnormalities (Tr. 15-16, 568, 587, 606, 621, 634-35, 653, 666-67, 669-70.) The ALJ cited to specific evidence in the record indicating largely mild findings, which supports his RFC finding and shows the ALJ adequately considered the record as a whole. Although the ALJ did not discuss every piece of evidence in support of his RFC finding, the ALJ is not required to do so. *See Nash*, 907 F.3d at 1090-91; *Hensley*, 829 F.3d at 932.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 29th day of June, 2020.